WASHINGTON FIRE & MARINE INSURANCE CO. *v.* HODGE.

5-1764                                                      320 S. W. 2d 926

Opinion delivered February 16, 1959.

[Rehearing denied March 16, 1959]

J. F. Sloan, III, James A. Robb, for appellant.

D. Leonard Lingo, Harry L. Ponder, for appellee.

CARLETON HARRIS, Chief Justice. This appeal relates to the construction of a limitation of use endorsement, attached to, and forming a part of a motor vehicle collision policy of insurance issued by Washington Fire & Marine Insurance Company, appellant herein, to appellee, Bunk Hodge, on August 28, 1956. On said date, Hodge, who resided at Walnut Ridge, Arkansas, and still so resides, while engaged in highway construction work, purchased a 1956 2-ton Dodge truck from the Ledbetter Motor Company upon a monthly payment sales contract, it being understood that insurance on the truck would be issued as a part of the transaction. A few days later, Hodge received from appellant company the policy of insurance sued upon. Item 1 lists the name of "Bunk Hodge" and underneath the name, "Walnut Ridge, Ark." Item 4, entitled "Garage;" provides "the automobile will be principally garaged in the above town and city, county and state, unless otherwise stated herein;". The policy was issued to Hodge at a reduced premium because of the following endorsement:

"AUTOMOBILE
(Physical Damage)

LIMITATION OF USE ENDORSEMENT— (COMMERCIAL AUTOMOBILE)

(Eastern, Western and Southern Territories)

Attached to and forming part of Policy Number BF 94297 issued to Bunk Hodge by Washington Fire & Marine Insurance Company located (city and state) ST. LOUIS, MISSOURI.

Date of Endorsement: 8-28-56

In consideration of the premium at which the Policy designated above is issued, it is warranted by the Insured that no regular or frequent trips of commercial vehicles described in such policy are or will be made during the policy period to any location beyond a 50 mile radius from the limits of the city or town of principal garaging of such vehicles.

All other terms and conditions of such Policy remain unchanged.

BY AT: JONESBORO, ARK.
AGENT
JOHN E. COOK
AUTHORIZED AGENT"

On August 3, 1957, while the insured truck was being driven by James Capales, on a highway construction job at Marianna, Arkansas, it collided with another truck. Appellant refused to pay the resulting loss because the truck had, for several weeks prior to the date of the collision, been daily used on construction work at sites more than 50 miles beyond Walnut Ridge. After the institution of suit by Hodge against appellant company for recovery, the court, sitting as a jury, awarded appellee judgment for $1,800 (the amount of the damage), the 12% statutory penalty, and attorneys' fee of $300, making a total amount of $2,316. From such judgment comes this appeal.

The evidence reflects that Hodge would locate a construction job, make arrangements for the hire of his trucks (which were equipped with dump beds and used for hauling dirt or stone), and arrange for a permanent place for the drivers to stay, along with garaging the trucks. The trucks would be moved to the selected base of operation, and used on the particular construction job until the project was completed. They would then be moved to another location with similar facilities, and the operation repeated. The operating base selected might be at any point in the state, but the haul distance from each point would not be in excess of the 50 mile limit imposed in the endorsement. In accordance with this general plan of operation, appellee placed the truck to use at Biggers, Arkansas, a distance of about 30 miles from Walnut Ridge, and the truck remained on the job for three or four weeks. The truck was then returned to Walnut Ridge and placed on another job in September.[1] The vehicle was then put up

---

[1] This job was in Jonesboro, and lasted two or three weeks.

for the winter, and placed on a job at Elaine, Arkansas, in July, 1957, a distance of considerably over 100 miles from Walnut Ridge. The next job was the Marianna job, from which this litigation arises. According to the evidence, Marianna is approximately 90 miles from Walnut Ridge, and was the "home base" for the particular job engaged in at that time, *i. e.*, the truck was being garaged in that city each night. The proof reflects that the collision took place within two or three weeks after the "Marianna job" started, and that the longest haul made was about 8 miles.

Hodge testified that he had bought two trucks from Ledbetter in 1952 or 1953, and that one of them was wrecked on a job at Texarkana. He stated that he had held an identical policy of insurance (issued in 1953), with the identical endorsement, on the truck wrecked at Texarkana, and with the same company, Washington Fire & Marine, appellant herein. Hodge testified that appellant company paid the claim. From his testimony:

"The only trouble I had with them, they thought I was running it over 50 miles. See, they thought I was garaging it here and going over in Texas.

Q. Where were you using the truck as it was at the time it was wrecked?

A. In Texas and Arkansas.

Q. Where was it garaged at that time?

A. At Texarkana. * * *

Q. Was it on one particular job?

A. Yes, we run the same road every day.

Q. Where did it have the wreck?

A. I think it was close to the land, the land where he was hauling material from over in Texas, I think it was 24 miles then, come through Texarkana bringing it on 67.

Q. On the other side of Texarkana?

A. Yes. What they thought, was we was hauling over 50 miles from the garage, and we never was hauling over 24 miles from the garage. * * * they just paid off and never said a word."

Appellant objected to this evidence as irrelevant and immaterial, and contended that it had no bearing on the contract in question. The court overruled the objection.

We are primarily concerned with whether the language of the policy, together with the endorsement, makes clear that the collision was covered (or *vice versa*), —or to the contrary, is such language ambiguous?

Appellant relies on items 1 and 4, together with the endorsement, as precluding recovery by appellee, contending that under the terms of the contract, the truck was not covered with collision insurance at any point located more than 50 miles from Walnut Ridge. Admittedly, the trips from Marianna would come under the definition of "regular and frequent." It is argued that this use of the vehicle was precisely the risk precluded by the language of the endorsement. Appellant's counsel state: "We are thus persuaded because one of the underlying principles of rate fixing is expressly predicated on the premise that degrees of risk vary between geographical divisions or locations.", and cite several cases from other jurisdictions to support this contention. In other words, the company's position is that the state of Arkansas is divided into geographical areas, as set out in the Automobile Casualty Manual, and appellant states the manual reflects that Walnut Ridge, Arkansas, is geographically situated in the division possessing the most economical rate of any area in the state; *i. e.*, if appellee had listed Marianna as the address in the policy instead of Walnut Ridge, he would have paid a higher premium. Appellant is in error. It is true that the state is divided geographically, and there is a variation of rates in the several areas, *but this*

*classification applies only to liability insurance.*[2] For collision insurance, the rate is the same over the entire state. Accordingly, the premium paid by Hodge was the same as the premium that would have been required in any other part of Arkansas, and appellant's principal argument therefore fails.

All policies denote the address of the person purchasing the insurance. Appellee was located at Walnut Ridge at the time the coverage was obtained, and of course, Hodge could not have listed any place of address other than Walnut Ridge, as he could not have known where various jobs would be obtained in the future. There can be no dispute but that Hodge complied with the terms of the endorsement, unless such endorsement clearly refers back to item 4 of the policy—which item, in turn, refers to the address under the policyholder's name. It will be remembered that item 4 provides that ''the automobile will be principally garaged in the above town and city, county and state, unless otherwise stated herein.'' If it was the intent of the company that the endorsement refer back to this item, it certainly could have been clearly stated; for instance, instead of reading ''from the limits of the city or town of principal garaging,'' the endorsement could easily have read ''from the limits of Walnut Ridge,'' or by adding ''as provided in item 4.'' Appellee asserts that the endorsement effectuates the intent of the subsequent provision in item 4, ''unless otherwise stated herein,'' and this contention that such endorsement comes within the quoted phrase, is sufficiently logical to raise a question, or create a doubt, as to the true purpose, or intent, of the language in the contract. Actually, since the premium for collision insurance on commercial vehicles is the same over the entire state, it would appear that the reduction of premium under the endorsement, is based upon the *use* of the truck, rather than the *locality*.

[2] The cases cited by appellant, heretofore mentioned, deal with liability insurance. *Kindred* v. *Pacific Automobile Insurance Co.*, 75 Pac. 2d 69, *Indiana Rolling Mill Baling Corporation* v. *National Automobile & Casualty Insurance Co.*, 240 F. 2d 74.

But if appellee was not clearly covered under the language of the contract, then certainly the provisions are ambiguous. In such event, appellant cannot prevail, for we have long been committed to the principle that where the provisions of a policy are susceptible of two equally reasonable constructions, one favorable to the insurer, and the other to the insured, the latter construction will be adopted. In *Fireman's Insurance Company of Newark, New Jersey* v. *Motley*, 222 Ark. 968, 264 S. W. 2d 418, a fire insurance policy covered equipment "* * * in the one story, approved roof, frame building occupied as cleaning and pressing shop, situated 711 North Cedar Street, Pine Bluff, Arkansas." It developed that the equipment was actually located in two buildings on the lot, one being the building described in the policy, and the other a "metal clad" building. The latter was destroyed by fire, while the building referred to in the policy was not damaged. Suit was instituted, and full recovery had. In affirming the judgment, this Court said:

"Under well-settled principles, where the provisions of a policy are susceptible of two equally reasonable constructions, one favorable to the insurer and the other to the insured, the latter will be adopted. This is because the language is chosen by the insurer with the aid of experts employed for the purpose of writing the policy, and the insured has no voice in the matter. Therefore, where either of the two constructions may be adopted, it is fair that that which will sustain the claim and cover the loss will be chosen, * * * ."

The holding in numerous other cases is to the same effect. Accordingly, even if appellee was not due to recover under the plain provisions of the policy, he was certainly entitled to recover under the above quoted rule.

The litigation is thus disposed of, but it might be well to point out that appellee's case is even stronger than simply depending upon the language of the contract, for we consider the evidence of the prior settlement to be

admissible. The 1953 policy was issued by the same company, and shows Hodge's address as Walnut Ridge; the provisions of item 4 are identical (except that in the earlier policy, this provision is listed as item 3), and the endorsement bears the identical provisions. Aside from the question of estoppel (likewise argued in the briefs) involving Hodge's right to rely upon the previous payment under an identical policy, as denoting coverage under the instant policy, we consider the evidence of the company's payment of the earlier claim to be pertinent for yet another reason, *viz.*, it is a strong circumstance to indicate how the appellant itself, construed the endorsement.

Appellee has moved for an additional attorneys' fee, and we are of the opinion that such motion should be granted. It is ordered that appellant pay to appellee's attorneys an additional fee of $200.

Affirmed.